IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| EDWARD MANDEL, et al., | § | |
| | § | |
| *Appellants,* | § | CIVIL ACTION No. 4:12-cv-87 |
| | § | |
| v. | § | JUDGE RON CLARK |
| | § | |
| C. MICHAEL JONES, | § | VSL |
| | § | |
| *Appellee.* | § | |

**MEMORANDUM OPINION ON APPEAL FROM BANKRUPTCY COURT**

Appellants Edward Mandel (debtor) and Irene Mandel (Co-Defendant below) appeal the Amended Final Judgment, dated December 20, 2011, allowing Appellee Michael Jones's claim against Edward Mandel. The Mandels raise several issues on appeal, relating to jurisdiction under *Stern v. Marshall*, the Texas Occupations Code, breach of contract, and the Bankruptcy Court's award of actual damages and attorney fees to Mr. Jones. The court reverses and vacates the Bankruptcy Court's award of attorney fees to Mr. Jones and otherwise affirms the Bankruptcy Court's December 20, 2011 Final Judgment.

## I. BACKGROUND

The Mandels hired Mr. Michael Jones to create designs for a number of homes.[1] Gary Wilson, the Mandels' builder, introduced Mr. Jones to the Mandels. Mr. Jones is not, and has never been, a licensed architect in any jurisdiction, though he has a degree in architecture from

---

[1] This lawsuit stems from agreements to design plans for homes on several properties—one property on Lorraine Street in Frisco, Texas (the "Lorraine Property"), one property on Normandy Street in Frisco, Texas (the "Normandy Property"), one plan for a property in Plano, Texas (the "Old Gate Property"), and plans for two other properties in Frisco, Texas (the "Longvue Property" and the "Stone Canyon Property").

Texas A&M. The Mandels paid Mr. Jones to design their personal residence on Lorraine Street in Frisco, Texas, and to design a "spec" house on Normandy Street in Frisco, Texas. After the home on the Normandy Property was built, the Mandels moved to that home and made it their personal residence. The Mandels paid Mr. Jones for his designs on the Lorraine and Normandy Properties, and there is no claim in this suit as to any monies owed on those properties. The dealings between the parties were generally informal, mostly involving discussions around a kitchen table and agreements confirmed with a handshake.

In this lawsuit, Mr. Jones brings causes of action for allegedly past due payments for designs for the Old Gate, Longvue, and Stone Canyon Properties. No house was ever constructed on the Old Gate or Longvue Properties. The Mandels did build a house on the Stone Canyon Property, using plans that Mr. Jones drew for Mr. Wilson, the previous owner of the Stone Canyon Property. The Mandels purchased the Stone Canyon Property from Mr. Wilson.

At the time that they purchased the Stone Canyon Property, Mr. Wilson was in the hospital in and out of a coma. The transaction was handled by Katherine Fizell, who at that time worked for Mr. Wilson as an independent contractor. Mr. Wilson's daughter, Ashley Wilson, authorized the sale of the Stone Canyon Property to the Mandels pursuant to a Power of Attorney signed by her father. Ashley Wilson relied upon Ms. Fizell to handle the terms of the transaction and never personally dealt with the Mandels regarding the sale. The Mandels contend that based upon representations by Ms. Fizell, they understood that they were purchasing Mr. Jones's design plans from Mr. Wilson along with the lot.

The Mandels paid Mr. Wilson about $22,500 more for the Stone Canyon Property than Mr. Wilson had purchased it for less than a year earlier. The Mandels thought they were overpaying so as to include the price of the plans and to help out the Wilsons in their time of

need. The Mandels assert that neither Mr. Jones nor Gary Wilson nor any of their representatives ever advised them prior to the completion of the house on the Stone Canyon Property that the Mandels would owe Mr. Jones for the plans or that Mr. Wilson had not already paid Mr. Jones for the plans. The Mandels have not paid Mr. Jones for his designs. Mr. Wilson has also not paid Mr. Jones for his designs, and Mr. Jones has not asked Mr. Wilson to do so. Likewise, the Mandels have not paid Mr. Jones for his designs for the Oldgate or the Longvue Properties.

When Mr. Jones filed his state court complaint, Mr. Jones had four unpaid invoices, totaling $42,123.25. Mr. Jones filed suit against Mr. and Mrs. Mandel in Collin County, Texas, alleging Texas state law claims for breach of oral contract, negligent misrepresentation, fraud and fraudulent misrepresentation, and quantum meruit and unjust enrichment. Mr. Jones sought compensatory damages, punitive damages, and attorney fees.

Mr. Jones and the Mandels stipulated that there was no written agreement between them relevant to Mr. Jones's breach of contract action. Rather, Mr. Jones's breach of contract claim was based on his assertions that a course of dealing was established between Mr. Jones and the Mandels when the Mandels paid Mr. Jones to design previous homes for them. Mr. Jones asserted that when the Mandels stopped paying for his services, they breached the contract established by their course of dealing.

The Mandels generally denied Mr. Jones's claims and asserted various affirmative defenses and counterclaims. The Mandels' affirmative defenses included: (1) that any agreement between the parties was barred by the statute of frauds because any agreement was oral and could not have been performed within one year of its making; (2) Mr. Jones was barred from enforcing any agreement due to his "prior breach" of using the plans he sold to the Mandels for

the Normandy Property to design other properties in the area; and (3) Mr. Jones was barred from recovery in this suit due to his failure to comply with, and his violations of, the Architects Registration Law in the Texas Occupations Code, by holding himself out as a registered architect. The Mandels also sought a declaratory judgment that any agreement between the parties was unenforceable as a matter of law due to the statute of frauds and Mr. Jones's lack of compliance with the Texas Occupations Code. Additionally, the Mandels counterclaimed for restitution for the amounts that they paid to Mr. Jones relating to his designs for the Normandy Property, arguing that those plans were meant to be exclusive to the Normandy Property and that Mr. Jones improperly used those plans to build another virtually identical home on Castle Bank Lane in Frisco, Texas.

In 2009, Mr. Mandel filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, and removed the case to the Bankruptcy Court. The case was docketed as an adversary proceeding (the "Adversary Proceeding"). Mr. Jones filed a claim in Mr. Mandel's bankruptcy, to which Mr. Mandel objected (the "Claims proceeding"). The issues raised in the Claims Proceeding were the same as those raised in the Adversary Proceeding, and thus the two were tried together, and the same judgment was entered in both.

The Bankruptcy Court ruled in favor of Mr. Jones on his breach of contract claim, finding that the Mandels failed to pay him for his work on the Stone Canyon, Longvue, and Old Gate Properties. The Bankruptcy Court found the Mandels' affirmative defenses to be without merit. The Bankruptcy Court reasoned that the Mandels could not prevail on their statute of frauds argument because the parties' oral agreements for design services could be performed within a year of the agreement. The Bankruptcy Court also reasoned that Mr. Jones's claims were not

barred by the Texas Occupations Code because Mr. Jones did not hold himself out to the public as an architect, did not represent to the Mandels that he was an architect, and did not represent to the Mandels that he was providing them with architectural services. The Bankruptcy Court also found that Mr. Jones had not breached the agreements between him and the Mandels. However, the Bankruptcy Court held that under *Stern v. Marshall*, 564 U.S. 462 (2011), it did not have the constitutional authority to decide the Mandels' counterclaim for restitution, at least not in the absence of the parties' express consent. Ultimately, the Bankruptcy Court allowed Mr. Jones an unsecured claim in the total amount of $62,123.25, for actual damages in the amount of $42,123.25 and attorney fees in the amount of $20,000.00.

The Mandels appealed the Bankruptcy Court's judgment. Counsel for the Mandels timely filed an Appellant Brief. Counsel for Mr. Jones has not filed a brief for Appellee. The court made several failed attempts at contacting counsel for Mr. Jones. Subsequently, the court attempted to contact Mr. Jones directly, who provided the court with his counsel's contact information. Counsel for Mr. Jones requested an extension of time to file a brief for Appellee, which the court granted. However, to date, counsel for Mr. Jones has not filed a brief for Appellee, the last requested extension of time has lapsed, and counsel for Mr. Jones has not requested another extension of time. The appeal is therefore ripe for this court's consideration.

## II. STANDARD OF REVIEW

District courts review bankruptcy rulings and decisions under the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000). A finding of fact is clearly erroneous only if, based on all of the evidence, the district court is left "with the definite and firm conviction that a mistake has been

made." *Robertson v. Dennis*, 330 F.3d 396, 701 (5th Cir. 2003). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 (5th Cir. 2013). Due regard must be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. FED. R. BANKR. P. 8013; *Matter of Herby's Foods, Inc.*, 2 F.3d 128, 131 (1993).

### III.  ISSUES PRESENTED

The Mandels raise twenty-one issues on appeal. Many of these issues are not adequately briefed. See *Good v. RMR Invs., Inc.*, 428 B.R. 249, 252 n.2 (E.D. Tex. 2010) (citing *Gen. Elec. Capital Corp. v. Acosta*, 406 F.3d 367, 374–75 (5th Cir. 2005) (merely listing an issue in an appellant's statement of issues on appeal does not preserve the issue on appeal where no argument was presented to the court in appellant's brief)). For clarity, the court has consolidated several of the overlapping issues raised by the Mandels in this appeal. The issues will be addressed in the following order: (1) whether the Bankruptcy Court erred in refusing to adjudicate the Mandels' counterclaim; (2) whether the Bankruptcy Court erred in finding that Mr. Jones's claims were not barred by the Architects Registration Law in the Texas Occupations Code; (3) whether the Bankruptcy Court erred in finding that a valid and enforceable contract existed between the Mandels and Mr. Jones; (4) whether the Bankruptcy Court erred in applying a hybrid theory of damages to Mr. Jones's breach of contract claim; and (5) whether the Bankruptcy Court erred in awarding $20,000 in attorney fees to Mr. Jones.

# IV. DISCUSSION

**A.    The Bankruptcy Court did not err in refusing to adjudicate the Mandels' restitution counterclaim.**

The Mandels argue that the bankruptcy court erred in finding or concluding that it did not have constitutional authority to adjudicate the affirmative relief portions of the Mandels' counterclaim under *Stern v. Marshall*.  The Mandels' counterclaim for declaratory judgment and restitution stated, in relevant part:

> Pursuant to the Texas Declaratory Judgments Act, [the Mandels] pray for declarations of the Court (i) that the agreements between the parties, for which Plaintiff sues, are unenforceable as a matter of law due to both the statute of frauds and [Mr. Jones's] lack of compliance with 1051.001 et seq. of the Texas Occupations Code (including but not limited to § 1051.701), (ii) that the terms of any such agreement <u>inter alia</u> that [Mr. Jones's] plans might be used (iii) that [Mr. Jones] has held himself out as an architect or architectural designer in violation of, and otherwise failed to comply with the provisions of, 1051.001 et seq. of the Texas Occupations Code (including but not limited to § 1051.701), **(iv) that any contract between the parties was previously breached by [Mr. Jones], in that [Mr. Jones] has used plans that were paid for by the Mandels to be exclusively drawn for their house on 4939 Normandy Drive in Frisco for other properties, and (v) that due to either both (iii) or (iv), the Mandels are entitled to restitution of all sums paid to Plaintiff for plans drawn for their house on 4939 Normandy Drive in Frisco.**

Am. Ans., Dkt. # 7-8, at p. 2–3 (emphasis added).

First, the Mandels argue that the Bankruptcy Court erred in concluding that it did not have constitutional authority to adjudicate their counterclaim for restitution because the restitution counterclaim was incorporated into Mr. Mandel's objection to Mr. Jones's Claim and in effect, would have operated as an offset against Mr. Jones's Claim.  The court disagrees.

28 U.S.C. § 157(b)(2) allows bankruptcy judges to "hear and determine . . . all core proceedings arising under title 11." 28 U.S.C. § 157(b)(2).  The statute lists "counterclaims by the estate against persons filing claims against the estate" as a core proceeding.  28 U.S.C. § 157(b)(2)(C).  However, in *Stern v. Marshall*, the Supreme Court discussed a bankruptcy

court's constitutional authority to enter final orders on certain core matters and held that in the absence of the parties' consent, a bankruptcy court "lack[s] the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 131 S. Ct. 2594, 2606–20 (2011).

The Mandels counterclaim that they are entitled to restitution for the money that they paid Mr. Jones for the plans that Mr. Jones allegedly designed exclusively for the Normandy Property because Mr. Jones then used the same plans to design other homes. Mr. Jones's breach of contract claim was based on nonpayment for the Old Gate, Longvue, and Stone Canyon Properties. The Mandels' state law counterclaim based on the Normandy Property is not necessarily resolved by the Bankruptcy Court ruling on Mr. Jones's claims based on the Old Gate, Longvue, and Stone Canyon Properties. *See Stern*, 131 S. Ct. at 2620.

The Mandels' argument that the Bankruptcy Court should have ruled on their restitution counterclaim based on the Normandy Property because a ruling in their favor would have operated as an offset against Mr. Jones's claims based on the Old Gate, Longvue, and Stone Canyon Properties is inapposite. A bankruptcy court may not rule on a debtor's state law counterclaim merely because it may have some bearing on a creditor's proof of claim; the proper "question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *See In re Galaz*, 765 F.3d 426, 431 (5th Cir. 2014) (quoting *Stern*, 131 S. Ct. at 2618). The Mandels' counterclaim is a breach of contract claim arising only under state law. Even though a ruling in the Mandels' favor may potentially augment the bankrupt estate, the restitution counterclaim does not stem from the bankruptcy itself. *See In re Bison Bldg. Holdings Inc.*, 473 B.R. 168, 171–72 (Bankr. S.D. Tex. 2012) ("A matter stems from the bankruptcy itself if the right is established by the Bankruptcy Code or if

the substantive outcome of the issue is affected by bankruptcy law."); *In re Carroll*, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011) (determining the scope of discharge stems from the bankruptcy itself). Because the Mandels' counterclaim for restitution neither stems from the bankruptcy itself nor is necessarily resolved in the claims allowance process, the Bankruptcy Court did not have constitutional authority to adjudicate it, in the absence of the parties' consent.

The Bankruptcy Court based its decision on the lack of constitutional authority to enter judgment on the Mandels' restitution counterclaim, in part, on the lack of express consent from the parties. However, during the pendency of this appeal, the Supreme Court issued its decision in *Wellness International Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015), in which it held that consent to trial of non-bankruptcy claims by a bankruptcy judge could be either express or implied, provided that the consent was made knowingly and voluntarily. *Wellness Int'l Network, Ltd. v. Shariff*, 135 S. Ct. 1932, 1947–48 (2015).

Parties may expressly consent to trial of a state-law counterclaim by including a statement of consent in their pleadings or orally before the court. FED. R. BANKR. P. 7008 advisory committee's note to 1987 amendment. Parties may impliedly consent to trial of a debtor's state-law counterclaim when a bankruptcy judge hears evidence and testimony related to that claim without the parties' objections. *See, e.g.*, *In re McCollom Interests, LLC*, 551 B.R. 292, 300 (Bankr. S.D. Tex. 2016) ("[T]his Court held two hearings during which two of the Firm's attorneys appeared and gave testimony; and the Firm never objected to this Court's constitutional authority to enter a final order. . . . If these circumstances do not constitute implied consent, nothing does."). Inclusion of an issue in a pretrial order also indicates implied consent.

In this case, counsel for Mr. Jones presented argument and evidence related to the Mandels' counterclaim for restitution at trial. In opening statements, counsel for Mr. Jones

argued that he would prevail on the Mandels' counterclaim for restitution. During trial, counsel for Mr. Jones questioned Mr. Mandel extensively, eliciting several minutes of testimony related to Mr. Mandel's position on his counterclaim for restitution. Counsel for Mr. Jones also elicited testimony about whether Mr. Jones's plans for the Normandy Property had a copyright symbol on them, and whether anyone else had ever seen such a symbol on Mr. Jones's plans, implying that the Mandels could have placed the symbol on the plans themselves. Counsel for the Mandels also elicited a large amount of testimony on this topic. Throughout the court proceedings, neither counsel objected to the Bankruptcy Court's trial of Mr. Mandels' counterclaim. Additionally, the parties included the restitution counterclaim in the "Disputed Issues of Fact" section of the Pre-Trial Order, which is signed by counsel for both the Mandels and Mr. Jones, as well as by Judge Rhoades. Pre-Trial Order, Dkt. # 7-7, at p. 15, ¶¶ 11, 12. The parties clearly impliedly consented to the Bankruptcy Court entering final judgment on the Mandels' restitution counterclaim in this case. However, the parties do not request that this court remand the restitution counterclaim to the Bankruptcy Court for decision based on their implied consent.

Moreover, the Bankruptcy Court severed the restitution counterclaim from the underlying Bankruptcy Case "for future determination by a court with proper jurisdiction over such matters." Amended Final Judgment, Dkt. # 2-1, at p. 2. The proper recourse at that point was for the Mandels to pursue their counterclaims in state court or to file a Motion to Withdraw Reference.[2] In keeping with the Mandels' constant decision to be tied in years of litigation

---

[2] At the hearing on the Motion to Amend the Final Judgment, which counsel for the Mandels pursued, counsel for Mr. Mandel requested that the Bankruptcy Court "sever out the counterclaim." Mtn. Am. Fin. Judg. Hrg. Tr., Dkt. # 6-1, at p. 4. At that hearing, the Bankruptcy Judge confirmed:

rather than pay Mr. Jones for his work, the Mandels chose neither option.[3] The court will not

now remand the case to the Bankruptcy Court to prolong the Mandels' litigation.

**B.      The Bankruptcy Court did not err in finding that Mr. Jones's claims were not barred by the Texas Occupations Code.**

The Mandels argue that the Bankruptcy Court erred in finding that Mr. Jones's claims

were not barred by sections 1051.001, 1051.001(7), and 1051.701 of the Texas Occupations

Code. These provisions comprise the Architects Registration Law and prohibit a person who is

not properly licensed from engaging in the practice of architecture "to protect the public against

the irresponsible practice of architecture." TEX. OCC. CODE ANN. §§ 1051.701(a); 1051.0015. In

keeping with the Architects Registration Law, contracts for architectural services to be

performed by a person who is not licensed to practice architecture in Texas are void and

unenforceable. *Seaview Hosp., Inc. v. Medicenters of Am., Inc.*, 570 S.W.2d 35, 39 (Tex. App.—

Corpus Christi 1978, writ dism'd). A person who is not licensed to practice architecture can

therefore not sue on a contract to provide architectural services. *See, e.g.*, *Farha*, 385 S.W.2d at

---

And you are correct, Mr. Canada, it was the Court's intent as to the counterclaim, the Court was not ruling on it. And given the Stern case, we could do a couple of different things. One is to send it up to the District Court for the District Court to try, or to allow you to go to whichever forum you wish to go to. . . . But you all can decide where you want to go rather than the Court forcing you into one court or the other. . . . the Court will not rule on the counterclaims and the parties can go to whichever forum they believe has jurisdiction to decide those issues and enter a final order on it . . . . And you'll submit an order granting your motion and submit an amended judgment with language providing that the . . . debtor may assert their counterclaim in an appropriate forum with jurisdiction.

Mtn. Am. Fin. Judg. Hrg. Tr., Dkt. # 6-1, at p. 6–7.

[3] As stated by the Bankrupty Judge, "[a]t some point, however, the Mandels decided that they would rather spend years in litigation than pay Jones." Findings of Fact and Concl. of Law, Dkt. # 2-2, at p. 7, ¶ 5.

694–95; *Clark*, 165 S.W.2d at 1019.[4]  The Architects Registration Law does not apply to an unlicensed person who (1) does not represent that he is a registered architect or architectural designer and (2) "prepares the architectural plans and specifications for or observes or supervises the construction, enlargement, or alteration of a privately owned building that is . . . a single-family or dual-family dwelling or a building or appurtenance associated with the dwelling . . . ." Tex. Occ. Code Ann. § 1051.606(a)(4)(B).

The Bankruptcy Court found that Mr. Jones fell within this exception to the Architects Registration Law because "Jones did not hold himself out to the public as an architect, nor did he represent to the Mandels that he was an architect or that he was providing them with architectural services."[5]  Find. Fact & Concl. Law, Dkt. # 7-1, at p. 11, ¶ 17.  The Mandels argue that Mr. Jones's claims are barred because the evidence was uncontroverted that Mr. Jones held himself out in writing as a registered architect by describing his plans as "architectural works."  The court disagrees.  The evidence supports the Bankruptcy Court's finding.

Mr. Mandel did testify that Mr. Jones held himself out to Mr. Mandel as a licensed architect in the State of Texas.  Tr., Dkt. # 43, at p. 35.[6]  Mr. Mandel testified that in his first meeting with Mr. Wilson and Mr. Jones, they represented to Mr. Mandel that Mr. Jones was a licensed architect.  Tr., Dkt. # 43, at p. 44:2–13.  However, Mr. Mandel's testimony is

---

[4] The *Clark* and *Farha* cases reference the predecessor statute of the Texas Occupations Code.  However, that statute is substantially similar to the relevant statute in this case.

[5] No party disputes that all of the properties at issue in this case are privately owned buildings that are single-family or dual-family dwellings.

[6] For reasons unbeknownst to the court, counsel for the Mandels did not designate the April 28, 2011 transcript, the transcript of the first day of trial, as part of this appeal.  Because it is relevant to the Mandels' arguments that certain testimony is "uncontroverted," and because counsel for the Mandels cites to that transcript in his appellant brief, the court had the transcript docketed and references it throughout this Order.  *See* Br., Dkt. # 6, at p. 28.

controverted by Mr. Wilson's testimony, who also testified about the initial meeting between him, Mr. Mandel, and Mr. Jones:

> Q.      Is Mike Jones a licensed architect in the state of Texas, to your knowledge?
> A.      No, sir.
> Q.      Have you ever known Mr. Jones to hold himself to others as a licensed architect in the State of Texas?
> A.      No, sir.
> Q.      You were in the first meeting during which you introduced Mr. Jones to the Mandels?
> A.      Yes, sir.
> Q.      During that meeting, at any time [sic] Mr. Jones hold himself out to be a licensed architect in the State of Texas?
> A.      No, sir.
> Q.      Did you represent during that initial meeting with the Mandels that Mr. Jones was a licensed architect in the State of Texas?
> A.      No, I didn't.

Tr., Dkt. # 43, at p. 75:8–23.

Similarly, Mr. Slocum, a Computer Aided Drafting and Design Designer, who worked often with Mr. Jones for about ten years, contradicted Mr. Mandel's testimony when Mr. Slocum testified that Mr. Jones had never held himself out to him as a licensed architect in the State of Texas.  Tr., Dkt. # 3, at p. 11:16–18.  On cross-examination by counsel for the Mandels (Mr. Canada), Mr. Slocum testified that he had never heard Mr. Jones refer to himself as an architectural designer, but only as having an architectural degree.  Tr., Dkt. # 3, at p. 12:9–13:13.  Finally, Mr. Jones's testimony directly contradicted Mr. Mandel's testimony, as he testified that he "never" represented to the Mandels that he was a licensed architect in the State of Texas, and "never" represented to anyone else that he is a licensed architect in Texas.  Tr., Dkt. # 3, at p. 44:1–7.

The Mandels argue that under *Clark v. Eads*, the evidence at trial establishes that Mr. Jones held himself out as an architect.  *Clark v. Eads* is inapposite to the present case.  In that

case, Mr. Eads sued to recover for design services that he provided to the Clarks for their residence. Unlike Mr. Jones, Mr. Eads admitted that he held himself out as an architect. *Clark*, 165 S.W.2d at 1022 ("Plaintiff alleged in substance that he was an architect and that he was consulted as an architect, and he sued for services rendered as an architect. His pleadings constituted a judicial admission."). Unlike Mr. Jones, Mr. Eads also testified on cross-examination that he had always held himself out as an architect. *Id.* To another question, Mr. Eads testified, "Well, I was represented as an architect." *Id.* In the present case, the only testimony that Mr. Jones held himself out as a licensed architect came from Mr. Mandel. Every other witness who testified on the topic contradicted Mr. Mandel's testimony.

The Bankruptcy Court did not err in finding that Mr. Jones did not hold himself out to be a licensed or registered architect in Texas. The Bankruptcy Court heard testimony from Mr. Jones, Mr. Wilson, and Mr. Slocum, all of whose testimony supported the Bankruptcy Court's finding. The Bankruptcy Court, as the factfinder, weighed the credibility of the witnesses, and evidently found the testimony of Mr. Jones, Mr. Wilson, and Mr. Slocum to be more credible than the testimony of Mr. Mandel. Due regard must be given the Bankruptcy Court's decision, and this court may not reverse it. *See Robertson*, 330 F.3d at 701; *Matter of Herby's Foods, Inc.*, 2 F.3d at 131.

The Mandels argue that Mr. Jones violated the Architects Registration Law because he has an architectural degree but no architect's license. As discussed above, the Bankruptcy Court did not err in finding that Mr. Jones fell within the exception to the Architects Registration Law. The relevant provisions of the Texas Occupations Code therefore do not apply to Mr. Jones. Regardless, the Architects Registration Law does not require the licensure of everyone with an

architectural degree, nor does it prohibit a non-licensed person from disclosing that he holds an architectural degree. The Mandels' appeal on this ground is denied.

### C. The Bankruptcy Court did not err in finding that Mr. Jones could recover on his breach of contract claim against the Mandels.

Next, the Mandels argue that the Bankruptcy Court erred in finding that a valid contract existed between the Mandels and Mr. Jones because the terms of the oral agreement were not "expressed with sufficient certainty" required to create a valid and enforceable oral contract. Br., Dkt. # 6, at p. 31–32 (citing *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App.—Texarkana, 1989, no writ)). Specifically, the Mandels argue that there was no agreement as to the performance of the Mandels—the time for payment.

"The terms of an oral contract must be definite, certain, and clear as to all essential terms; or the contract will fail for indefiniteness." *Farone v. Bag'n Baggage, Ltd.*, 165 S.W.3d 795, 802 (Tex. App.—Eastland 2005, no pet.). "A lack of definiteness in an agreement may concern the time of performance, the price to be paid, the work to be done, the service to be rendered or the property to be transferred." *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1992, writ denied). "The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain." *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 455 (Tex. App.—Fort Worth 2009, pet. denied). The trier of fact can draw inferences as to the terms of an oral contract through the parties' course of conduct and earlier business dealings. *See, e.g.*, *Davis v. Chaparro*, 431 S.W.3d 717, 722 (Tex. App.—El Paso 2014, pet. denied); *Domingo v. Mitchell*, 257 S.W.3d 34, 41 (Tex. App.—Amarillo 2008, pet. denied) (finding that promises to make payments based on the parties' conduct and prior course of dealings was sufficient consideration to create a binding contract).

In support of their argument that there was no agreement as to the time of payment, the Mandels point to Mr. Mandel's testimony that he thought any payment would only be due if someone used Mr. Jones's plans to actually begin building a house and that the time of the payment would be when interim financing "closed," as well as Mr. Mandel's testimony that he had "absolutely no clue until litigation" that Mr. Jones was incurring any costs. However, this testimony is not uncontroverted.

Mr. Jones testified that when he designed the plans for the Lorraine Property, the Mandels agreed, via a handshake deal, to pay him a certain price per square feet and agreed to make that payment upon Mr. Jones's completion of the plans. Tr., Dkt. # 3, at p. 44:11–45:7. Mr. Jones testified that although Mr. Mandel was slow to pay Mr. Jones, Mr. Mandel did eventually pay Mr. Jones. Tr., Dkt. # 3, at p. 45:1–3. There was no written contract for the Lorraine property. Tr., Dkt. # 3, at p. 45:4–5. Similarly, Mr. Jones testified that he designed plans for the Normandy Property with no written contract but was still paid. Tr., Dkt. # 3, at p. 45:12–25. Mr. Jones testified that this agreement was also based on a handshake. Tr., Dkt. # 3, at p. 46:3–4. Mr. Jones testified that his interactions with the Mandels regarding the agreements for the payment and plans of the Lorraine and Normandy Properties established a course of dealing between him and the Mandels. Tr., Dkt. # 3, at p. 51:18–19. Mr. Jones's testimony establishes that there was a course of dealing between Mr. Jones and the Mandels from which the Bankruptcy Court, as the trier of fact, could have inferred that the terms of the oral contracts between Mr. Jones and the Mandels for the Stone Canyon, Longvue, and Old Gate Properties, included an agreement by the Mandels to pay Mr. Jones upon the completion of his plans for the Stone Canyon, Longvue, and Old Gate Properties.

Moreover, Mr. Jones testified that after Mr. Wilson fell into a coma, he learned that the Mandels decided to buy the Stone Canyon Property from Mr. Wilson. Tr., Dkt. # 3, at p. 47:9–13. Mr. Jones also testified that subsequently, he met with Mr. Mandel and asked him if he would be interested in purchasing his plans for the Stone Canyon Property. Tr., Dkt. # 3, at p. 47:25–48:2. Mr. Jones testified that Mr. Mandel took the plans home from that meeting, studied them with his wife, and then told Mr. Jones that they wanted to purchase the plans if Mr. Jones was willing to make significant revisions to the plans. Tr., Dkt. # 3, at p. 48:3–9.

Although Mr. Jones's recollection of the parties' prior dealings contradicted that of Mr. Jones, the Bankruptcy Court, as the trier of fact observing the demeanor of the witnesses, was entitled to find Mr. Jones's testimony more credible than that of Mr. Mandel. *See Robertson*, 330 F.3d at 701; *Matter of Herby's Foods, Inc.*, 2 F.3d at 131. The Bankruptcy Court did not err in its determination that a valid and enforceable oral contract existed.

The Mandels also argue that Mr. Jones cannot prevail on a breach of contract claim for the Stone Canyon, Longvue, and Old Gate Properties due to Mr. Jones's prior breach of the contract regarding the Normandy Property, in re-using the plans which the Mandels claim were drawn exclusively for the Normandy Property, to design other homes not owned by the Mandels. The contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that only applies when the breaching party breaches the same contract on which he is suing. *Blackstone Med., Inc. v. Phx. Surgicals, L.L.C.*, 470 S.W.3d 636, 646 (Tex. App.—Dallas 2015, no pet.). The parties' oral contract regarding the Normandy Property is separate from their contract regarding the Stone Canyon Property, their contract regarding the Longvue Property, and their contract regarding the Old Gate Property. The Mandels cannot apply a prior material breach defense based on a breach

of the Normandy contract to excuse their performance on the Stone Canyon, Longvue, or Old Gate contracts. The Bankruptcy Court did not err in concluding that Mr. Jones could recover on his breach of contract claim for his work on the Stone Canyon, Longvue, and Old Gate Properties.

**D.** **The Bankruptcy Court did not err in awarding Mr. Jones actual damages in the amount of $42,123.25.**

The Mandels argue that that the Bankruptcy Court erred in awarding Mr. Jones damages based on price per square foot, plus costs, for the Stone Canyon, Longvue, and Old Gate Properties because the award is inconsistent with Mr. Jones's testimony that he thought he was going to be paid per square foot and that a typical transaction includes computer-aided design and drafting ("CADD") costs as incorporated into the square foot charge.

The Bankruptcy Court's award for actual damages is not inconsistent with Mr. Jones's testimony. Mr. Jones testified that the Mandels were aware that expenses are incurred once the designing reached the CADD stage. Tr., Dkt. # 3, at p. 51:7–19. Mr. Jones also testified that he "typically charge[s]" his clients for any changes made after the plans go through a first round of CADD. Tr., Dkt. # 3, at p. 66:23–67:1. Finally, Mr. Jones testified that the price per square foot multiplied by the total number of square feet, plus the fees for rendering that he was not paid for, totaled $42,123.[7] Tr., Dkt. # 3, at p. 103:6–25. To the extent that this testimony conflicted with any other testimony, the Bankruptcy Court Judge, as the factfinder, was entitled to judge the credibility of the witnesses and make its own finding of fact based on the evidence. Because the Bankruptcy Court's finding that Mr. Jones was entitled to $42,123.25 is not clearly erroneous, this court cannot reverse it.

---

[7] Mr. Jones's counsel clarified in closing arguments that the total amount of actual damages Mr. Jones suffered was $42,123.25. Tr., Dkt. # 3, at p. 163:11–13.

**E.      The Bankruptcy Court erred in awarding the $20,000 in attorney fees to Mr. Jones.**

The Mandels argue that the Bankruptcy Court erred in awarding $20,000 in attorney fees to Mr. Jones because no evidence was offered in support of this award.  The Bankruptcy Court awarded attorney fees to Mr. Jones under section 37.009 of the Texas Civil Practice and Remedies Code because Mr. Jones prevailed on the Mandels' declaratory judgment counterclaim.  Find. Fact & Concl. Law, Dkt. # 7-1, at p. 11, ¶¶ 19, 21.

Under section 37.009, "the court may award . . . reasonable and necessary attorney's fees as are equitable and just" in an action under the Texas Declaratory Judgment Act ("TDJA").  TEX. CIV. PRAC. & REM. CODE § 37.009.  However, a federal court "cannot award attorney's fees under the TDJA because it is bound to apply federal procedural law and the TDJA functions solely as a procedural mechanism." *Callan v. Deutsche Bank Tr. Co. Ams.*, 11 F. Supp. 3d 761, 771 (S.D. Tex. 2014) (citing *Utica Lloyds of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)). "Accordingly, a party may not rely on the TDJA to authorize an award of attorney fees in federal court." *Callahan*, 11 F. Supp. 3d at 771; *see also Gemini Ins. v. S & J Diving, Inc.*, 464 F. Supp. 2d 641, 651 (S.D. Tex. 2006).  A party may recover attorney fees under the federal Declaratory Judgment Act when recovery of those fees is available under the relevant substantive state law in a diversity action.  The substantive state law at the heart of this diversity action is a breach of contract claim, which is likely why Mr. Jones sought attorney fees under section 38.001 of the Texas Civil Practice and Remedies Code.

Section 38.001 provides that a party who recovers on a claim for breach of oral or written contract may recover attorney fees.  TEX. CIV. PRAC. & REM. CODE § 38.001.  When a prevailing party in a breach of contract suit seeks fees, an award of reasonable fees is mandatory, provided that there is proof of reasonable fees and the plaintiff has been awarded damages.  *Mathis v.*

*Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002); *see also In re Pride Cos.*, 285 B.R. 366, 371 (Bankr. N. D. Tex. 2002). The Bankruptcy Court noted in its Findings of Fact and Conclusions of Law that "[a]s the prevailing party, Jones requests an award of $35,000 in attorneys' fees, consisting of 140 hours at the hourly rate of $250."

When counsel for Mr. Jones neglected to file his appellee brief in this case, the court went to great lengths trying to locate counsel and remind him of his deadline. After locating counsel for Mr. Jones, the court found that counsel for Mr. Jones had changed law firms and contact information but had not updated that information with the court. Counsel filed a Motion for an Extension of Time to file his appellee brief, which this court generously granted. To date, counsel has not filed an appellee brief, nor has he requested another extension of time. The court assumes that because he has not filed an appellee brief pointing the court to any relevant evidence, he has no factual basis on which to oppose the Mandels' argument that there is no evidence in the record to support the Bankruptcy Court's award of attorney fees to Mr. Jones.

Additionally, the court conducted a careful and thorough review of the trial transcript and the evidences that counsel for the Mandels designated for appeal. After reviewing this information, the court can find no evidence of counsel for Mr. Jones requesting payment for 140 hours of work in this case; the court did find two documents in the record relevant to attorney fees. The court found Mr. Jones's Proof of Claim, in which counsel for Mr. Jones requests "reasonable and necessary attorneys' fees (over $30,000 to date)." Proof of Claim in Bankr. No. 10-40219, Dkt. # 494-1, at p. 3. The court also found the Mandels' Exhibit I, which is Mr. Jones's Response to the Mandels' Requests for Disclosure from this lawsuit before it was removed from the 366th Judicial District for Collin County, Texas. In response to a request for

disclosure of "[t]he legal theories and, in general, the factual bases of the responding party's claims or defenses," counsel for Mr. Jones wrote, in relevant part,

> Plaintiff seeks recovery of its reasonable and necessary attorneys' fees incurred in connection with this case. Attorneys' fees continue to accrue. The jury will be called upon to determine the reasonableness and necessity of Plaintiff's attorneys' fees in this case. Plaintiff's experts on attorneys' fees will testify that a rate of $250 per hour is reasonable and necessary for this case, as is a contingency fee of 40% of this recovery.

Def. Ex. I, Pl. Resp. to Def. Req. for Discl. The court can find no evidence in the record of counsel for Mr. Jones requesting 140 hours of work for this case. Neither party has pointed the court to an exhibit in support of this amount of hours claimed, nor has either party pointed the court to an exhibit in support of the amount of hours actually worked. Additionally, neither party has pointed the court towards testimony or evidence of the reasonableness of the attorney fees in this case. No testimony was presented on the reasonableness or necessity of attorney fees at trial in the Bankruptcy Court. The court therefore has no information or evidence on which to judge whether the attorney fees awarded in this case were reasonable. The court reverses and vacates the Bankruptcy Court's $20,000 award of attorney fees to Mr. Jones.

## V.  CONCLUSION

Based on the foregoing, the Bankruptcy Court's December 20, 2011 Amended Final Judgment is **AFFIRMED IN PART** and **REVERSED IN PART**.

The Bankruptcy Court's award of attorney fees to Mr. Jones in the amount of $20,000 is **REVERSED** and **VACATED**. The Bankruptcy Court's December 20, 2011 Amended Final Judgment is otherwise **AFFIRMED.**

So **ORDERED** and **SIGNED** this **16** day of **September, 2016.**

_Ron Clark_
_____
Ron Clark, United States District Judge